P. T. McDermott, Inc., Plaintiff, *v.* The Arden Construction Company, Inc., et al., Defendants.

(Supreme Court, Kings Special Term, December, 1918.)

Lien Law, § 22 — when building loan contract must be filed in county clerk's office — what subject to lien and claim of person who shall thereafter file notice of lien — mechanics' liens — foreclosure — contracts — statutes.

The purpose of section 22 of the Lien Law is to furnish additional protection to persons whose material is used for the benefit and improvement of real property and said section aims to preserve a legal status which a contractor was justified in presuming to exist in the absence from the records of any agreement effective to create adverse rights and interests in favor of another, as against the owner of the real property.

Where an agreement by a mortgage company to convey certain properties upon which the grantee agrees to erect a number of buildings, though containing numerous and complicated conditions precedent, also contains all the essentials of a building loan agreement, the mortgage company is liable to the contractors and materialmen for its failure to file the agreement as required by section 22 of the Lien Law, which declares that

**464** McDermott, Inc., *v.* Arden Const. Co., Inc.

Supreme Court, December, 1918. [Vol. 105.

if a building loan contract is not filed in the county clerk's office, the interest of each party to the contract in the real property affected thereby is subject to the lien and claim of a person who shall thereafter file a notice of lien under the statute.

Where in an action to foreclose a mechanic's lien it appears that a large portion of $85,000 advanced by the mortgage company under its agreement with the construction company, and for which it held a first lien, went toward the payment of several parcels of property formerly owned by the mortgage company and which it contracted to convey to the construction company or to its assignees, and it further appeared that the parties to the action furnished all the material and did all the work for which payment is sought, upon the buildings erected between the date of the aforesaid agreement and the date of an agreement, duly recorded, between said mortgage company and an assignee of the first agreement, which had never been recorded, each of the lienors is entitled to recover from the mortgage company the amount of their respective liens, as to defeat such claims would be to nullify section 23 of the Lien Law, which requires that the statute shall be liberally construed to serve the " beneficial interests and purposes thereof."

Action to foreclose liens.

Albert A. Hovell, for plaintiff.

James P. Judge, for defendant Lawyers' Mortgage Company.

Callaghan, J. On the 13th day of October, 1915, the defendant Lawyers' Mortgage Company and the defendant The Montague Construction Company, entered into an agreement by the terms of which the mortgage company was to convey to the construction company properties, the value of which was fixed in said agreement at $126,000, and which further provided that the construction company was to erect five buildings on Woodruff avenue, Brooklyn, and five

buildings on Parkside avenue, Brooklyn, and which specified, in a general way, the character of the buildings to be erected. The agreement further provided that the mortgage company was to make building loans on the properties upon which the buildings were to be erected and specified the amount of the building loan on each house.

The work of construction on five of the buildings was by the terms of that agreement to be begun within sixty days from the date thereof and the buildings were to be fully enclosed not later than April 1, 1916. The plans and specifications for the buildings were to be satisfactory to the mortgage company and were to be approved by it before the foundations of the buildings were laid. A schedule of payments for the building loan was set forth in the agreement; the first payment was to be fifty per cent; second, twelve and one-half per cent; third, fifteen per cent; fourth, twenty-two and one-half per cent.

Permission was given to the construction company to sell the land upon which the buildings were to be erected and the mortgage company agreed to continue the loans, providing the buildings were satisfactory to it and that its consent was given to such sale. It further agreed to make permanent loans for the amount specified in the agreement for a term of three years, with interest at five and one-half per cent per annum, upon completion of the buildings.

After that agreement was made, the construction company entered into a contract with Braude & Papae whereby they took over the property and agreed to erect the buildings thereon. The mortgage company, on October twenty-sixth, consented to the transfer from the Montague Construction Company to these builders, and further agreed, upon the builders furnishing satisfactory plans and specifications, that it

30

would "make them building loans" on the houses and would make the loans permanent upon the completion of the work, providing the buildings were finished in a manner satisfactory to the mortgage company.

Braude & Papae caused a corporation to be formed under the name of The Arden Construction Company, Inc., which is one of the defendants in this action. The Arden Construction Company then entered upon the construction of five of these buildings on Woodruff avenue, and on May 25, 1916, these buildings were entirely enclosed. The agreement of October thirteenth has never been recorded.

On the 25th day of May, 1916, five separate agreements were entered into between The Arden Construction Company and the Lawyers' Mortgage Company, which were duly recorded. These agreements provide for a loan of $35,000 on four of the buildings, and $30,000 upon one of the buildings. The agreements of May twenty-fifth recited that buildings were at that time being erected upon the premises, and the mortgage company upon the making of the agreements of May twenty-fifth advanced upon these five buildings $85,000, which was fifty per cent of the amount which it had agreed to loan in the agreements of October 13, 1915, and May 25, 1916.

The plaintiff and defendants in this action who now assert liens furnished all the material and did all the work, for which payment is now sought, upon these buildings, between the 13th day of October, 1915, the date of the first agreement, and May 25, 1916, the date of the second agreement.

The notice of lien filed stated that the lienors claim that the mortgages made by the mortgage company "are subject and subordinate to the rights of the lienor in and against said premises by reason, among other things, of the fact that the building loan agree-

ment under which the moneys secured to be paid thereby, were and are to be advanced and all modification thereof was and has not been filed in the office of the clerk of the county of Kings as required by Lien Law in the State of New York."

The question therefore arises as to whether the mortgage company is liable to these lienors for its failure to file the agreement of October 13, 1915. The Lien Law, section 22, is as follows:

" Building loan contract. A contract for a building loan, either with or without the sale of land, and any modification thereof, must be in writing and duly acknowledged, and within ten days after its execution be filed in the office of the clerk of the county in which any part of the land is situated, and the same shall not be filed in the register's office of any county. If not so filed the interest of each party to such contract in the real property affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien under this chapter. A modification of such contract shall not affect or impair the right or interest of a person, who, previous to the filing of such modification had furnished or contracted to furnish materials, or had performed or contracted to perform labor for the improvement of real property, but such right or interest shall be determined by the original contract.   *   *   *   Such contracts and modifications thereof shall be indexed in a book provided for that purpose, in the alphabetical order of the names of the persons to whom such loans shall be made."

The mortgage company insists that the agreement of October 13, 1915, was not an agreement for a building loan but is only an agreement to make an agreement for a building loan, *i. e.,* the contracts of May 25, 1916; and, therefore, it is not liable in this action because of its failure to record it pursuant to the pro-

**468** McDermott, Inc., *v.* Arden Const. Co., Inc.

Supreme Court, December, 1918. [Vol. 105.

visions of that section. With that contention I am unable to agree. While that agreement contained numerous and complicated conditions precedent it nevertheless contained all the essential elements of a building loan agreement. If filed, it would at least have informed contractors and materialmen that the builder was not to advance the money for the contemplated improvements. That contractors and materialmen shall have such information is undoubtedly one of the primary reasons underlying the enactment of section 22 of the Lien Law. The possession or absence of such knowledge controls the entire action of the contractor from the time he begins to furnish the material.

To place upon this agreement any other construction would tend to defeat the very purpose of the statute, and to put the stamp of approval upon such a transaction would be to encourage a subterfuge by which honest claims for materials furnished in good faith could be defeated. The agreements of May twenty-fifth are not new contracts. They were drawn for the sole purpose of carrying into effect the provisions of the contract of October thirteenth and modifying that contract.

Section 22 of the Lien law is penal in character. *Packard* v. *Sugarman,* 31 Misc. Rep. 623. Its purpose is to furnish additional protection to materialmen, whose material is used for the benefit and improvement of real estate. It aims to preserve in law a legal status, that which the contractor was justified in presuming to exist, in the absence from the records of any agreement effective to create adverse rights and interests in favor of another, as against the owner. The effect of the provision is that if the owner is not in fact furnishing the money: if the constantly increasing equity in the property, as the improvement progresses,

is not in fact to inure to the benefit of the owner but is to be subsequently absorbed by mortgages, in favor of one who actually furnishes the money, then the result so contemplated can only be effectuated in law by complying with the provisions of section 22, *i. e.,* the contract creating the situation described must be in writing, acknowledged and filed as therein prescribed.

Abundant reason for the enactment of this statute is furnished by the facts in this case. The mortgage company has advanced $85,000 and has a first lien against the property as security for that loan. The security which it has was created partly by the material and labor and services of the lienors. The original owner of the property was entitled to receive only a very small payment when she subrogated her mortgage to the mortgage of the Lawyers' Mortgage Company. We may assume, therefore (and I think the testimony fairly establishes the fact), that a large portion of the $85,000 advanced went toward the payment of the seven parcels of property formerly owned by the Lawyers' Mortgage Company and contracted to be sold to the Montague Construction Company, or its assignees, by the agreement of October 13, 1915.

To defeat these claims would be to nullify the provisions of the Lien Law. Section 23 requires the act to be liberally construed to secure the "beneficial interests and purposes thereof." Concededly, the beneficial interest to be conserved by this section is the interest of the lienor. A liberal construction of the statute would, therefore, require that it be construed favorably to the lienors. Had they been advised of the exact character and terms of the agreement of October thirteenth each could have, and perhaps would have, filed a notice of mechanic's lien, and such notice would have secured to them either a

payment in full of their claims from the property or from the advance made by the mortgage company. It follows, therefore, that each of the lienors are entitled to recover the amounts of their respective liens from the mortgage company, with interest. The plaintiff may have the costs of the action.

Judgment accordingly.